UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
CAMILLA MRAZ and JIRI O. MRAZ A/K/A
GEORGE MRAZ,

                Plaintiffs,                MEMORANDUM AND ORDER
                                                      17-CV-6380

   - against –


JPMORGAN CHASE BANK, N.A.,
J.P. MORGAN SECURITIES, LLC,
JORGE LUIS ARGUDO,
and RUBIEL TINEO,

                Defendants.
-------------------------------------------------------x
GLASSER, Senior United States District Judge:

      Plaintiffs Camilla Mraz and Jiri ("George") O. Mraz ("Plaintiffs") initially brought this action—alleging breach of contract, negligence, breach of fiduciary duty, and breach of the duty of good faith and fair dealing—in New York Supreme Court, in Queens County, against JPMorgan Chase Bank, N.A. ("Chase"), and three Chase employees: Sabrina Nguyen, Jorge Luis Argudo, and Rubiel Tineo. ECF No. 1-2 at 3-9 ("Compl."). Defendants immediately removed the case to federal court on the basis of diversity jurisdiction. ECF No. 1. Before the Court now is Plaintiffs' motion to remand the case to state court, ECF No. 13, which they filed concurrently with an amended complaint, ECF No. 14 ("Am. Compl."). The amended complaint terminates Nguyen as a defendant, seeks to join J.P. Morgan Securities, LLC ("JPMS") as a defendant, and adds a cause of action for tortious interference with contractual relations. Am. Compl. As pled, complete diversity does not exist: Argudo and Tineo (the "Individual Defendants") are, like Plaintiffs, citizens of New York, and so too is JPMS. But Chase, JPMS, and the Individual Defendants (together, "Defendants") argue that, in deciding this motion, the Court should (i) disregard the

1

Individual Defendants, under the doctrine of fraudulent joinder, and (ii) disallow the post-removal joinder of JPMS, under 28 U.S.C. § 1447(e). The Court agrees, for the reasons discussed below, and therefore Plaintiffs' motion is DENIED.

## BACKGROUND

Plaintiffs Camilla and George Mraz are a married couple residing in Woodside, Queens. *See* Compl. ¶¶ 1-2; Am. Compl. ¶¶ 1-2; ECF No. 1-2 at 28-43 ("Mraz Aff.") ¶ 3; ECF No. 13-2 ("Second Mraz Aff.") ¶ 3.[1] At all relevant times, Plaintiffs have had two joint bank accounts at Chase, a checking account and a savings account (the "Mraz Accounts"). Compl. ¶ 7. Plaintiffs' now-deceased friend Milan Mader—whose estate is *not* a party to this action—also maintained checking and savings accounts with Chase, as well as an investment account with JPMS. *See id.* ¶¶ 12-13, 16; ECF No. 17 ¶¶ 3, 5; ECF No. 19 ¶¶ 3-4. Argudo and Tineo are Chase employees— and allegedly also JPMS employees or agents[2]—whose interactions with Plaintiffs and Mader form part of the basis of Plaintiffs' complaint.

Critically, a contract exists between Plaintiffs and Chase that governs their respective obligations regarding the Mraz Accounts—namely, Chase's Deposit Account Agreement ("DAA"). Plaintiffs allege that they do not know whether any agreement exists between them and Chase, Am. Compl. ¶ 12, but Defendants have attached the DAA, as well as the account signature cards for the Mraz Accounts, to their opposition brief, and the documents speak for themselves.

---

[1] The original and amended complaints contain substantial overlap, as do Mrs. Mraz's first and second affidavits. The Court will not clutter the rest of this opinion with duplicative citations to both complaints or to both affidavits. But where these otherwise duplicative documents are materially different from each other in a manner relevant to this motion, the Court will note that fact.

[2] Defendants dispute this allegation and have put forth evidence indicating that Argudo and Tineo are employees only of Chase, not JPMS. *See* ECF Nos. 20, 20-1, 20-2. The Court need not resolve this dispute to decide this motion.

2

*See* ECF Nos. 18-1 ("DAA"), 17-5 (Mraz Account 4283 signature card), 17-7 (Mraz Account 4333 signature card). Of particular relevance to this dispute is a section of the DAA entitled "Restricting your account; blocking or delaying transactions," which provides as follows:

> There are many reasons we may decline or prevent transactions to or from your account, but we generally do it to protect you or us, or to comply with legal requirements. We may decline or prevent any or all transactions to or from your account. We may refuse, freeze, or reverse or delay any specific withdrawal, payment or transfer of funds to or from your account, or we may remove funds from your account to hold them pending investigation, including in one or more of the following circumstances:
>
> . . . .
>
> - We suspect that any transaction may involve illegal activity or may be fraudulent;
>
> . . . .
>
> - We reasonably believe that doing so is necessary to avoid a loss or reduce risk to us.
>
> . . . .
>
> We will have no liability for any action we take under this section.

DAA § I.3.

With this provision of the DAA in mind, we turn now to the crux of this dispute: In May 2017, Chase froze the Mraz Accounts, purportedly over concerns that Mader was a victim of financial abuse by Plaintiffs. Compl. ¶ 18. Specifically, Chase suspected that Plaintiffs had stolen money from Mader when, in March 2017, acting pursuant to powers of attorney given to her by Mader, Mrs. Mraz transferred $60,000 from Mader's Chase checking account to Plaintiffs' joint Chase checking account. *See id.* ¶¶ 16, 18. Chase removed the restriction on Plaintiffs' accounts in July 2017, except as to $7,968.12—the remaining funds traceable to the $60,000 transfer. *See* ECF No. 8 at 1-2. According to Plaintiffs, however, Mader was their longtime friend, and the $60,000 transfer was effectuated with his consent and intended to reimburse Plaintiffs for expenses

3

they had incurred on his behalf while he was in ill health.  *See* Compl. ¶¶ 15-16; Second Mraz Aff. ¶ 17.  Plaintiffs allege that (i) Chase's freeze of their accounts was and is improper; (ii) Chase and the Individual Defendants have not been working in good faith to resolve the situation; and (iii) Plaintiffs have suffered damages as a result of the account freeze.  Compl. ¶¶ 21-23.  Defendants, on the other hand, point out that the DAA authorizes Chase to restrict accounts pending investigation in circumstances where Chase (i) suspects transactions may be fraudulent or (ii) reasonably believes the restriction is necessary to protect Chase from a loss.  *See* ECF No. 8 at 2 (citing DAA § I.3).  Defendants claim that both of these justifications for an account freeze apply here, where Chase (i) suspects the $60,000 transfer was the product of financial abuse by Plaintiffs and (ii) reasonably believes it must restrict the funds traceable to that transfer in order to insulate itself from liability to Mader or his estate.  *See id.* at 2-3.

As to the non-diverse Defendants specifically, in the original complaint, filed in state court, Plaintiffs did not include JPMS as a defendant and brought only one claim against the Individual Defendants, for negligence.  *See* Compl. ¶¶ 29-32.  Plaintiffs' amended complaint, filed concurrently with their motion to remand, seeks to join JPMS as a defendant; adds JPMS to Plaintiffs' negligence claim (and drops Chase); and brings additional causes of action against JPMS and the Individual Defendants for breach of fiduciary duty and tortious interference with contractual relations.  *See* Am. Compl. ¶¶ 50-62, 71-75.  Plaintiffs' theory of liability as to the negligence claim in their original complaint was that the Individual Defendants (i) had duties to Plaintiffs "to, *inter alia*, handle the Mraz Accounts in a commercially-reasonable manner, to allow Plaintiffs to utilize the funds in the Mraz Accounts and to properly investigate the freeze of the funds in the Mraz Accounts" and (ii) breached those duties "by fail[ing] and/or refus[ing] to

properly investigate whether the freeze of the funds in [the] Mraz Accounts was proper or to release the restraint on the Mraz Accounts." Compl. ¶¶ 22, 30-31.

Plaintiffs' theory of liability with respect to the non-diverse Defendants has changed in the amended complaint. In the amended complaint, in support of their negligence claim, Plaintiffs allege that the Individual Defendants and JPMS owed duties to Mader based on his investment account and that those duties extended also to Mader's attorney-in-fact, Mrs. Mraz. *See* Am. Compl. ¶ 51. Specifically, Plaintiffs allege that JPMS and the Individual Defendants

> had duties to Mader and to his attorney-in-fact, Mrs. Mraz, to, *inter alia*, (a) provide advice regarding their customer Mader so as to effect his directives, (b) to handle instructions relating to the Mader Accounts, as delivered by Mader's attorney-in-fact and Mader's attorneys at law in the Czech Republic and the United States in a commercially-reasonable manner so as not to cause harm to Mader's attorney-in-fact, (c) to refrain from taking action which would cause injury to Plaintiffs as a result of Mrs. Mraz's discharge of her duties as Mader's attorney-in-fact, (d) to follow the instructions of Mader without reasonable grounds to question them, (e) to properly investigate the instructions issued by Mader before recommending an investigation of Mrs. Mraz and a freeze of the funds in the Mraz Accounts, and (f) to comply with all FINRA Rules of Conduct, including, but not limited to, Rule 2210(d)(1), which requires Tineo, Argudo and JPM[S] to deal with Mader in good faith and through fair dealing, and in accordance with the highest business standards.

*Id.* Plaintiffs allege that the Individual Defendants breached as to each of these duties. *Id.* ¶ 52. Plaintiffs' breach-of-fiduciary-duty claim against the Individual Defendants and JPMS is similarly premised on a fiduciary duty allegedly owed "to Mader and to his attorney-in-fact, Mrs. Mraz," which duty they allegedly breached "by their failure or refusal to, *inter alia*, provide information and guidance relating to and otherwise handle the Mader Accounts for the benefit of Mader." *Id.* ¶¶ 55-56. Finally, regarding their newly added tortious interference with contract claim, Plaintiffs allege that the Individual Defendants and JPMS "intentionally and knowing[ly] accuse[d] Mrs. Mraz of elder fraud and embezzlement and trigger[ed] the freezing of the Mraz Accounts, thus

5

causing a breach of the Mader's and Mraz's agreement for her to act as Mader's attorney-in-fact and representative." *Id.* ¶ 73.

## LEGAL STANDARDS

### I. Removal, Remand, and Fraudulent Joinder

Under 28 U.S.C. § 1441(a), a defendant sued in state court may remove the action to federal court if the federal district courts have original jurisdiction over the case—i.e., "if it could have originally been commenced in federal court on either the basis of federal question jurisdiction or diversity jurisdiction." *Citibank, N.A.* v. *Swiatkoski*, 395 F. Supp. 2d 5, 8 (E.D.N.Y. 2005). On a motion to remand, the removing party "'bears the burden of demonstrating the propriety of removal.'" *Cal. Pub. Emps.' Ret. Sys.* v. *WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004) (quoting *Grimo* v. *Blue Cross/Blue Shield of Vt.*, 34 F.3d 148, 151 (2d Cir. 1994)).

Under 28 U.S.C. § 1332, a federal court "only ha[s] diversity jurisdiction when there is complete diversity between the parties—that is, when all plaintiffs are citizens of different states from all defendants." *Gurney's Inn Resort & Spa Ltd.* v. *Benjamin*, 743 F. Supp. 2d 117, 120 (E.D.N.Y. 2010). But "a plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties with no real connection with the controversy." *Pampillonia* v. *RJR Nabisco, Inc.*, 138 F.3d 459, 460-61 (2d Cir. 1998). Thus, under the doctrine of fraudulent joinder, a court may disregard a non-diverse party if the defendant demonstrates, by clear and convincing evidence, either that (i) "there has been outright fraud committed in the plaintiff's pleadings" or (ii) "that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." *Id.* at 461; *see also, e.g.*, *Allied Programs Corp.* v. *Puritan Ins. Co.*, 592 F. Supp. 1274, 1276 (S.D.N.Y. 1984) ("Joinder will be considered fraudulent when it is established that there can be no recovery

6

[against the defendant] under the law of the state on the cause alleged." (quotation marks omitted)). In assessing whether a party has been fraudulently joined, a court may look beyond the pleadings. *Zyprexa Prods. Liability Litig.*, Nos. 04-MD-01596, 08-CV-3249, 2009 WL 1044508, at *4 (E.D.N.Y. Apr. 15, 2009).

The propriety of removal is "determined by the pleadings at the time of removal." *Fed. Ins. Co.* v. *Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 368 (S.D.N.Y. 2006) (citing *Pullman Co.* v. *Jenkins*, 305 U.S. 534, 537 (1939)); *see also Vera v. Saks & Co.*, 335 F.3d 109, 116 (2d Cir. 2003) ("[W]e generally evaluate a defendant's right to remove a case to federal court at the time the removal notice is filed."). This rule means that, in determining whether a non-diverse defendant has been fraudulently joined, "a court must look primarily to the pleadings . . . as they existed at the time of removal." *Segal* v. *Firtash*, No. 13-CV-7818, 2014 WL 4470426, at *4 (S.D.N.Y. Sept. 9, 2014). "[P]ost-removal filings"—like an amended complaint—"must not be considered 'when or to the extent that they present new causes of action or theories not raised in the controlling petition filed in state court.'" *Id.* (quoting *MBIA Ins. Corp.* v. *Royal Bank of Canada*, 706 F. Supp. 2d 380, 395 (S.D.N.Y. 2009)).

## II. Post-Removal Joinder of a Non-Diverse Party

If a plaintiff seeks to join a non-diverse defendant *after* removal, in an amended complaint, then, under 28 U.S.C. § 1447(e), "the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). In such circumstances, the Court must engage in a two-step analysis: First, the Court must determine whether joinder is permissible under Rule 20 of the Federal Rules of Civil Procedure. *Vanderzalm* v. *Sechrist Indus., Inc.*, 875 F. Supp. 2d 179, 183 (E.D.N.Y. 2012). If joinder is permissible under Rule 20, the second step of the inquiry is to "'ascertain whether the balancing of certain relevant considerations weighs in favor of joinder and

7

its necessarily attendant remand.'" *Id.* (quoting *McGee* v. *State Farm Mut. Auto. Ins. Co.*, 684 F. Supp. 2d 258, 262 (E.D.N.Y. 2009)). The "critical issue" in this second inquiry "is whether joinder comports with principles of fundamental fairness," and courts in the Second Circuit utilize a four-factor test to make that determination. *Ruiz* v. *Forest City Enters., Inc.*, No. 09-CV-4699, 2010 WL 3322505, at *3 (E.D.N.Y. Aug. 20, 2010). The four factors are as follows:

(1) whether the plaintiff has unduly delayed moving to amend and its reason(s) for doing so;

(2) whether the defendants will be prejudiced by remand;

(3) whether there is a likelihood of multiple litigations in the event that joinder is not ordered; and

(4) whether the plaintiff was motivated to amend to destroy jurisdiction.

*Id.*; *see also, e.g.*, *Bruno* v. *Zimmer, Inc.*, CV 15-6129, 2018 WL 671234, at *2 (E.D.N.Y. Feb. 1, 2018) (describing same test). In weighing the fourth factor—the plaintiff's motivation—"courts typically look to the timing of the joinder, the circumstances of the case, and whether there is a cause of action against the non-diverse defendant." *Ruiz*, 2010 WL 3322505, at *3.

## DISCUSSION

Defendants do not dispute that, as pled, complete diversity does not exist in this case: Plaintiffs are citizens of New York, as are the Individual Defendants and JPMS. As discussed below, however, Plaintiffs cannot possibly state a cause of action under New York law against any of the non-diverse Defendants, and JPMS appears to have been joined precisely for the purpose of destroying diversity. For these reasons, Defendants' initial removal was proper, under the doctrine

of fraudulent joinder, and the Court will exercise its discretion under 28 U.S.C. § 1447(e) to deny Plaintiffs' post-removal joinder of JPMS, thereby retaining diversity jurisdiction over this case.[3]

## I. The Negligence Claim Against the Individual Defendants in the Original Complaint

The propriety of removal is determined based on the pleadings as they existed at the time of removal, as discussed above. Here, JPMS was not a defendant in the original complaint, and the only claim against the Individual Defendants in the original complaint was for negligence. That negligence claim was based on the Individual Defendants' alleged failure or refusal to investigate and release the restriction placed on the Mraz Accounts, which failure breached their alleged duty to handle those accounts in a commercially reasonable manner. *See* Compl. ¶¶ 22, 30-31. Plaintiffs could not possibly recover on that claim under New York law, as Defendants have clearly and convincingly demonstrated.

Under well-settled New York law, "the underlying relationship between a depositor and a bank is that of debtor and creditor which relationship is grounded in contract." *In re Sanger*, 46 Misc. 3d 830, 833 (N.Y. Sur. 2014) (citing *Merrill Lynch, Pierce, Fenner & Smith* v. *Chemical Bank*, 57 N.Y.2d 439, 444 (N.Y. 1982)). Therefore, "a cause of action sounding in tort alleged by a depositor against its bank"—or against bank employees acting within the scope of their employment—"must rest on some duty independent of the bank-depositor contract." *Tevdorachvili* v. *Chase Manhattan Bank*, 103 F. Supp. 2d 632, 640 (E.D.N.Y. 2000); *see also Wells* v. *Bank of N.Y. Co.*, 181 Misc. 2d 574, 579 (N.Y. Sup. Ct. 1999) ("[A] cause of action for negligence cannot be based on a breach of a contractual duty between [the defendant bank] and [the plaintiff depositors]."). Yet here, as pled in the original complaint, the Individual Defendants

---

[3] Chase, the only other Defendant, is a citizen solely of Ohio, as discussed at an earlier hearing in this case. *See* ECF No. 21-1 at 15-16.

9

did not owe Plaintiffs any duty independent of the contractual duties Chase owed Plaintiffs by virtue of the DAA.[4] The allegation that the Individual Defendants acted negligently by failing, in the course of their employment, to handle the Mraz Accounts in a commercially reasonable manner is a contract claim repackaged as a tort claim, and as such it will not lie under New York law. *See Clark-Fitzpatrick, Inc.* v. *Long Island R.R. Co.*, 516 N.E.2d 190, 194 (N.Y. 1987) ("Merely charging a breach of a 'duty of care', employing language familiar to tort law, does not, without more, transform a simple breach of contract into a tort claim."). Plaintiffs effectively conceded as much when they adopted an entirely new theory of negligence liability in the amended complaint.

Since Plaintiffs could not possibly have prevailed in state court on the only claim they brought against the Individual Defendants in the original complaint, the Individual Defendants were fraudulently joined. And with the Individual Defendants disregarded, complete diversity existed based on the pleadings at the time of removal. Accordingly, removal was proper.

**II.    The Claims Against the Individual Defendants in the Amended Complaint**

Plaintiffs' post-removal amended complaint is irrelevant to the determination of whether removal was proper. But even if the Court were to consider the amended complaint, Plaintiffs still have not stated a cause of action against the Individual Defendants upon which they could prevail in state court. Plaintiffs assert three claims against the Individual Defendants in the amended

---

[4] Plaintiffs did allege that the Individual Defendants were Financial Industry Regulatory Authority ("FINRA") members subject to FINRA rules, Compl. ¶ 20, but they appeared to rely on this allegation to support their claim against Chase for breach of the duty of good faith and fair dealing, not their negligence claim against the Individual Defendants. *See id.* ¶ 39. To the extent Plaintiffs intended otherwise, the Court agrees with Defendants that the FINRA allegation added no substance to Plaintiffs' negligence claim. FINRA rules govern securities transactions, not FDIC-insured bank accounts like the Mraz Accounts, and in any event, "FINRA does not provide a private right of action, thus even if defendants violated FINRA rules, plaintiff cannot recover for negligence based on the alleged violation of [a FINRA rule]." *Fox* v. *Lifemark Sec. Corp.*, 84 F. Supp. 3d 239, 245 (W.D.N.Y. 2015).

10

complaint: negligence, breach of fiduciary duty, and tortious interference with contractual relations. All three claims are hallucinatory.

The negligence and breach-of-fiduciary duty claims in the amended complaint both fail for the same reason: They are premised entirely on duties allegedly owed to Mader, which duties then allegedly flowed to Mrs. Mraz by virtue of her status as Mader's attorney-in-fact. *See* Am. Compl. ¶¶ 51-52, 55-56. Defendants dispute Plaintiffs' allegations as to the duties owed Mader, but Plaintiffs' negligence and breach-of-fiduciary-duty claims suffer from a more fundamental flaw: Even if the Individual Defendants did owe *Mader* these duties, Plaintiffs have offered no support—and there is none—for their implicit contention that those duties extended also to Mrs. Mraz in her personal capacity. Yet it is in Mrs. Mraz's personal capacity—and Mr. Mraz's—that Plaintiffs bring this lawsuit. Plaintiffs do not have standing to bring claims on behalf of Mader for violations of duties allegedly owed to Mader, but the convoluted negligence and breach-of-fiduciary-duty claims in the amended complaint are a transparent attempt to do so. For this reason, Plaintiffs could not possibly prevail on these claims in state court, and therefore these claims cannot defeat diversity jurisdiction here.[5]

Plaintiffs' claim for tortious interference with contractual relations is likewise meritless, for at least two reasons. First, under New York law, "[a] contract terminable at will cannot be the basis for a tortious interference with contract claim" because "there can be no breach of contract, a necessary element for tortious interference with contract, when the contract may be terminated

---

[5] Plaintiffs raised yet another, entirely new theory of negligence liability—negligent misrepresentation—in their reply brief. *See* ECF No. 24 at 8-14. The Court will not consider this new theory, as "'[a]rguments may not be made for the first time in a reply brief.'" *Zirogiannis* v. *Seterus, Inc.*, 221 F. Supp. 3d 292, 298 (E.D.N.Y.) (quoting *Knipe* v. *Skinner*, 999 F.2d 708, 711 (2d Cir. 1993)); *see also Domino Media, Inc.* v. *Kranis*, 9 F. Supp. 2d 374, 387 (S.D.N.Y. 1998) ("New arguments first raised in reply papers in support of a motion will not be considered.").

at will." *AIM Int'l Trading, L.L.C.* v. *Valcucine S.p.A*, No. 02 Civ. 1363, 2003 WL 21203503, at *5 (S.D.N.Y. May 22, 2003) (collecting cases). Here, the contract with which the Individual Defendants are alleged to have tortiously interfered—Mrs. Mraz's agreement to serve as Mader's attorney-in-fact—was terminable at will by the principal, as indicated by the relevant power-of-attorney forms. *See* ECF Nos. 18-4 (Chase's durable power of attorney form), 18-6 (New York statutory short form power of attorney). This fact alone dooms Plaintiffs' claim.

Second, and equally fatal to their tortious interference claim, Plaintiffs have not satisfactorily alleged the damages element of the claim—i.e., damages resulting from breach of the contract. *See Joan Hansen & Co.* v. *Everlast World's Boxing Headquarters Corp.*, 296 A.D.2d 103, 111 (N.Y. App. Div. 2002). Here, the only damages Plaintiffs have alleged in connection with their tortious interference claim are damages caused by "the freezing of the Mraz Accounts." Am. Compl. ¶ 75. These damages, even assuming the Individual Defendants did cause them, did not result from any supposed breach by Mrs. Mraz of her contract with Mader.

### III. Joinder of JPMS

As discussed above, determining whether to permit post-removal joinder of a non-diverse defendant entails a two-step inquiry: First, the Court must determine whether joinder is permissible under Rule 20, and if it is, the Court must then utilize a four-factor balancing test to determine whether joinder would be fundamentally fair. The analysis need not be protracted here. The Court assumes, as do Defendants, that joinder of JPMS would be permissible, under Rule 20(a)(2). And the Court views the first three factors of the balancing test as either neutral or weighing weakly in favor of allowing joinder: (1) Plaintiffs did not unduly delay in moving to amend their complaint; (2) Defendants would not be prejudiced by joinder of JPMS, except insofar as it would require remand to state court; and (3) denial of joinder might result in multiple

litigations if Plaintiffs file a separate case against JPMS in state court.[6] But for the two reasons discussed below, the fourth factor—Plaintiffs' motivation in amending their complaint—weighs so heavily against joinder of JPMS as to be dispositive.

First, the case chronology strongly suggests that Plaintiffs' motive in joining JPMS was to destroy diversity. *See McGee*, 684 F. Supp. 2d at 264 (noting that a court "can draw the appropriate inferences based on the case chronology"). Plaintiffs filed the amended complaint, which joined JPMS, "contemporaneously with [their] motion to remand." *Id.* This timing "all but compel[s]" the inference "that the complaint was amended with the deliberate purpose of divesting this Court of jurisdiction," especially because Plaintiffs do not have a good explanation for why JPMS was not named as a defendant in the original complaint. *Id.* Plaintiffs claim they did not learn that the Individual Defendants were registered with JPMS until after Defendants had removed the case to federal court, but the documents from which they claim to have learned that—the BrokerCheck reports for Tineo and Argudo, ECF No. 13-20—are publicly available. If indeed Plaintiffs did not discover those reports until after the case had been removed, the Court suspects Plaintiffs found them while searching for ways to add non-diverse defendants.

Second, and more significantly, Plaintiffs cannot (and do not) state any viable causes of action against JPMS. Plaintiffs bring three claims against JPMS in the amended complaint: negligence, breach of fiduciary duty, and tortious interference with contract. *See* Am. Coml. ¶¶ 50-62, 71-75. For all three claims, Plaintiffs' theory of JPMS's liability is one of *respondeat superior*, with Plaintiffs purporting to hold JPMS vicariously liable for the torts of the Individual

---

[6] The Court does have reason to doubt multiple litigations would actually ensue: As discussed *infra*, Plaintiffs have no viable claim against JPMS that could survive a motion to dismiss in state court, and Defendants also argue that JPMS's brokerage agreement with Mader would allow them to compel arbitration of any claim based on his relationship with JPMS.

Defendants; Plaintiffs explain as much in their brief, *see* ECF No. 13-1 at 13-17. But "[a] claim of vicarious liability cannot stand when 'there is no primary liability upon which such a claim of vicarious liability might rest.'" *Pereira* v. *St. Joseph's Cemetery*, 54 A.D.3d 835, 837 (N.Y. App. Div. 2008) (quoting *Karudman* v. *Newsday, Inc.*, 416 N.E.2d 557, 564 (N.Y. 1980)). Because Plaintiffs cannot state a cause of action against the Individual Defendants, as discussed above, neither can they state a cause of action against JPMS under a theory of *respondeat superior*.

In sum, the Court concludes that (i) Plaintiffs joined JPMS precisely for the purpose of destroying diversity and (ii) Plaintiffs have no viable claim against JPMS. In these circumstances, joinder of JPMS would be fundamentally unfair. Accordingly, joinder of JPMS is denied.

## CONCLUSION

For the reasons discussed above, Plaintiffs' motion to remand this case to state court is denied. The Court also hereby exercises its power under Rule 21 of the Federal Rules of Civil Procedure to dismiss the non-diverse parties—the Individual Defendants and JPMS—from this action.

SO ORDERED.

Dated: Brooklyn, New York
May 3, 2018

/s/_____
I. Leo Glasser               U.S.D.J.