UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
CAMILLA MRAZ and JIRI O. MRAZ A/K/A
GEORGE MRAZ,

                Plaintiffs,                    MEMORANDUM AND ORDER
                                                 17-CV-6380

    - against –


JPMORGAN CHASE BANK, N.A.,
J.P. MORGAN SECURITIES, LLC,
JORGE LUIS ARGUDO,
and RUBIEL TINEO,

                Defendants.
-------------------------------------------------------x
GLASSER, Senior United States District Judge:

      Plaintiffs Camilla Mraz and Jiri ("George") O. Mraz ("Plaintiffs") initially brought this action—alleging breach of contract, negligence, breach of fiduciary duty, and breach of the duty of good faith and fair dealing—in New York Supreme Court, Queens County, against JPMorgan Chase Bank, N.A. ("Chase"), and three Chase employees: Sabrina Nguyen, Jorge Luis Argudo, and Rubiel Tineo. (ECF No. 1-2 at 3-9). Defendants immediately removed the case to federal court on the basis of diversity jurisdiction. (ECF No. 1). Plaintiffs moved to remand the case to state court, (ECF No. 13), and filed an Amended Complaint, (ECF No. 14 ("Am. Compl.")), which terminated Nguyen as a defendant, sought to join J.P. Morgan Securities, LLC ("JPMS") as a defendant, and added a cause of action for tortious interference with contractual relations. On May 3, 2018, the Court denied Plaintiff's motion to remand and dismissed, pursuant to Rule 21 of the Federal Rules of Civil Procedure, the individual defendants and JPMS from this action. (ECF No. 34).

1

On May 24, 2018, Chase filed an Interpleader and Third-Party Complaint against Mrs. Mraz, as Preliminary Executor of Milan Mader's estate, and the Public Administrator of Queens County (the "Public Administrator"), pursuant to Rule 22 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1335. (ECF No. 35, the "Interpleader"). Mrs. Mraz denies that Mader's estate has any claim to the funds at the center of this dispute and the Public Administrator avers the same. (ECF Nos. 43, 49). Pending now before the Court is Chase's motion for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, seeking to (1) dismiss Plaintiffs' Amended Complaint and (2) grant Chase's interpleader and discharge Chase from any further liability. (ECF No. 52). For the reasons explained below, Chase's motion is **GRANTED**.

## BACKGROUND

The Court assumes the parties' familiarity with the facts of this case and refers to its Memorandum and Order denying Plaintiffs' motion to remand and dismissing the individual defendants and JPMS from this action. (ECF No. 34). To reiterate briefly, Plaintiffs have two joint bank accounts at Chase, a checking and a savings account (the "Mraz Accounts"). (Am. Compl. ¶ 11). Their claims arise from a provision of Chase's Deposit Account Agreement ("DAA"), a contract that exists between the parties governing their respective obligations in connection with the Mraz Accounts, which provides, in relevant part,

> There are many reasons we may decline or prevent transactions to or from your account, but we generally do it to protect you or us, or to comply with legal requirements. We may decline or prevent any or all transactions to or from your account. We may refuse, freeze, or reverse or delay any specific withdrawal, payment or transfer of funds to or from your account, or we may remove funds from your account to hold them pending investigation, including in one or more of the following circumstances:
>
> - [. . .]
> - We suspect that any transaction may involve illegal activity or may be fraudulent;
> - [. . .]

2

- We reasonably believe that doing so is necessary to avoid a loss or reduce risk to us.

We will have no liability for any action we take under this section.

DAA § I.3. Plaintiffs' now-deceased friend, Milan Mader, also maintained checking and savings accounts with Chase. (Am. Compl. ¶ 15). In May 2017, Chase froze the Mraz Accounts because it suspected that Plaintiffs had stolen money from Mader when, in March 2017, acting pursuant to a power of attorney given to her by Mader, Mrs. Mraz transferred $60,000 from Mader's checking account to Plaintiffs' joint checking account. (*Id.* at ¶¶ 36, 39). Chase removed the restriction on the Mraz Accounts in July 2017, except as to $7,968.12—the remaining funds traceable to the $60,000 transfer. (Interpleader ¶ 2).

Plaintiffs allege that (i) Chase's freeze of their accounts was and is improper; (ii) Chase has not been working in good faith to unfreeze the accounts; and (iii) Plaintiffs have suffered damages as a result. Chase, on the other hand, correctly points out that the DAA authorizes it to restrict the Mraz Accounts pending an investigation into whether the $60,000 transfer was the product of financial abuse by Plaintiffs. However, Chase now seeks permission from the Court to release the remaining funds from the Mraz Accounts to Plaintiffs and to preclude Chase from any further liability in connection with the funds.

**LEGAL STANDARD**

Rule 12(c) motions for judgment on the pleadings are subject to the same standards applicable to Rule 12(b)(6) motions to dismiss. *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

3

Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In deciding a Rule 12(b)(6) motion, the Court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in its favor. *ATSI Commc'ns, Inc. v. Shaar Fund, LTD.*, 493 F.3d 87, 98 (2d Cir. 2007). The Court may consider, in addition to the facts stated in the complaint, "any written instrument attached to the complaint," as well as "documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *Id.*

## DISCUSSION

### I. Plaintiffs' Amended Complaint

#### a. *Plaintiffs' Breach of Contract and Good Faith and Fair Dealing Claims*

Under New York law, "an action for breach of contract requires proof of (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994). Plaintiffs' allege that "if an agreement exists by and among Chase and Plaintiffs, it grants Chase a limited right to freeze a customer's account subject to duties and obligations, *inter alia*, to exercise good faith, conduct a reasonable investigation and impose the freeze for only a reasonable extension of time and subject to reasonable limitations." (Am. Compl. ¶ 46). They claim Chase breached an agreement between them when it wrongfully froze the Mraz Accounts. (*Id.* ¶ 47).

As the Court already noted, the operative contract between Plaintiffs and Chase is the DAA, which provides that Chase may freeze the Mraz Accounts if it "suspects that any transaction may involve illegal activity or may be fraudulent" or "reasonably believe[s] that doing so is necessary to avoid a loss or reduce risk to [Chase]." DAA § I.3. Chase may freeze those accounts pending an investigation into those suspicions, which when conducted here, resulted in, among other things, a continuing concern that Mader's estate will assert a claim to the funds because Mrs.

4

Mraz improperly transferred them. (ECF No. 35 ¶¶ 23-33). Accordingly, the Court finds that Chase did not breach the DAA and its motion for judgment on the pleadings of Plaintiffs' claim is granted. Having dismissed Plaintiffs' breach of contract claim, their good faith and fair dealing claim is also dismissed. *Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002) ("New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled.").

### b. *Plaintiffs' Fiduciary Duty Claim*

Plaintiffs' breach of fiduciary duty claim similarly fails. Under New York law, a fiduciary relationship does not exist between a bank and its customer. *Greenberg, Trager & Herbst, LLP v. HSBC Bank USA*, 17 N.Y.3d 565, 574, 958 N.E.2d 77, 81 (2011); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Chem. Bank*, 57 N.Y.2d 439, 444, 442 N.E.2d 1253 (1982) (noting that the "underlying relationship between a bank and its depositor is the contractual one of debtor and creditor . . . ."). Plaintiffs' claim that despite this well-settled principle, a fiduciary relationship between them and Chase arose because (1) Chase employees gave Mrs. Mraz, in her capacity as Mader's attorney-in-fact, advice in connection with Mader's bank accounts and (2) Chase improperly froze the Mraz Accounts. (ECF No. 61 at 16). As the Court already noted in its previous Memorandum and Order with respect to the claims against the individual defendants,

> Even if the Individual Defendants did owe ***Mader*** these duties, Plaintiffs have offered no support—and there is none—for their implicit contention that those duties extended also to Mrs. Mraz in her personal capacity. Yet it is in Mrs. Mraz's personal capacity—and Mr. Mraz's—that Plaintiffs bring this lawsuit. Plaintiffs do not have standing to bring claims on behalf of Mader for violations of duties allegedly owed to Mader, but the convoluted negligence and breach-of-fiduciary-duty claims in the amended complaint are a transparent attempt to do so.

5

(ECF No. 34 at 11). The same is true for Plaintiffs' breach of fiduciary duty claim against Chase. That Chase froze the Mraz Accounts has no bearing on whether a fiduciary duty arose and is merely duplicative of Plaintiffs' breach of contract allegations. Accordingly, Plaintiffs' breach of fiduciary duty claim is dismissed.

   II.   **Chase's Interpleader Action**

Chase seeks to interplead Mrs. Mraz, as the Preliminary Executor of Milan's estate, and the Public Administrator of Queens County through a counterclaim pursuant to Rule 22 of the Federal Rules of Civil Procedure ("Rule Interpleader") and 28 U.S.C. § 1335 ("Statutory Interpleader"). (ECF No. 35). The purpose behind Rule and Statutory Interpleader is the same—they "afford[] a [stakeholder] who fears being exposed to the vexation of defending multiple claims to a limited fund or property that is under his control a procedure to settle the controversy and satisfy his obligation in a single proceeding." Wright & Miller, When Interpleader Is Appropriate—In General, 7 Fed. Prac. & Proc. Civ. § 1704 (3d ed.). However, the subject matter jurisdiction requirements between the two are different—Rule Interpleader requires general federal question or diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332, while Statutory Interpleader calls for diversity of citizenship between two or more of the adverse claimants and requires that the amount in controversy be at least $500. *Id.* at § 1703. Citizenship of the stakeholder is irrelevant for Statutory Interpleader. *Id.*

Chase points out that the Court does not have original jurisdiction over its Interpleader action[1] but argues that the Court should exercise supplemental jurisdiction pursuant to 28 U.S.C.

---

[1] Regarding Rule Interpleader, complete diversity exists but Chase cannot satisfy the jurisdictional amount under 28 U.S.C. § 1332. Regarding Statutory Interpleader, the jurisdictional amount is satisfied, but the minimal diversity requirement is not because the adverse claimants, Plaintiffs and the Estate, are both New York citizens.

§ 1367(a), which provides that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." Having dismissed Plaintiffs' claims over which the Court had original jurisdiction, the Court may decline to exercise supplemental jurisdiction over Chase's Interpleader. However, the Court may maintain jurisdiction by weighing the "traditional values of judicial economy, convenience, fairness, and comity." *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006). Doing so here, and considering that neither Mader's estate nor the Public Administrator have asserted claims to the funds, the Court will exercise supplemental jurisdiction of Chase's interpleader action, which is not likely to require further litigation beyond this motion.

The first stage of interpleader requires a determination whether the stakeholder, Chase, legitimately fears litigious vexation directed against a single fund. Wright & Miller, When Interpleader Is Appropriate—In General, 7 Fed. Prac. & Proc. Civ. § 1704 (3d ed.). The Court finds that at the time the Interpleader was filed, Chase legitimately feared future actions against it for the $60,000 that was seemingly transferred as a result of financial abuse by Plaintiffs. Turning to the second stage of interpleader, which is to determine the merits of the action, the Court finds that because neither Mader's Estate nor the Public Administrator assert claims to the transferred funds, they have forfeited any claim they might have. *Metro. Life Ins. Co. v. Little*, No. 13-CV-1059 (BMC), 2013 WL 4495684, at *2 (E.D.N.Y. Aug. 17, 2013) ("The failure of the named interpleader defendant to answer the interpleader complaint and assert a claim to the *res* can be viewed as forfeiting any claim of entitlement that might have been asserted."); (*See* ECF Nos. 43, 49). Accordingly, if Chase is satisfied that the transfer by Mrs. Mraz was not the result of financial

7

abuse, the Court directs Chase to release the frozen funds to Plaintiffs and relieves Chase from further liability in connection with those funds.

## CONCLUSION

For the reasons set forth above, Chase's motion for judgment on the pleadings is **GRANTED** and Chase is directed to release the remaining $7,968.13 to Plaintiffs.

SO ORDERED.

Dated:      Brooklyn, New York
              April 3, 2019

/s/
I. Leo Glasser               U.S.D.J.